UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JANE DOE,<br>    Plaintiff,<br><br>v.<br><br>NORWALK COMMUNITY COLLEGE,<br>BOARD OF TRUSTEES, CONNECTICUT<br>COMMUNITY COLLEGES, and<br>RONALD MASI, individually,<br>    Defendants. | :<br>:<br>:   CIVIL ACTION NO.<br>:   3:04-cv-1976 (JCH)<br>:<br>:<br>:<br>:<br>:   JULY 16, 2007<br>: |

**RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [Doc. No. 95]**

The plaintiff, Jane Doe, brings this action against Norwalk Community College ("NCC") and the Board of Trustees, Connecticut Community Colleges ("Board") (collectively, the "defendants"), as well as against Ronald Masi in his individual capacity. In her Amended Complaint [Doc. No. 31], Doe alleges violations of Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681-1688. Doe also asserts state law claims of negligent retention and supervision and negligent infliction of emotional distress.

The defendants have filed a Motion for Summary Judgment [Doc. No. 95] pursuant to Rule 56 of the Federal Rules of Civil Procedure. Their motion is not submitted on behalf of the pro se defendant Ronald Masi.[1]

**I. STANDARD OF REVIEW**

In a motion for summary judgment, the burden is on the moving party to

---

[1] Doe has also filed a Motion for Sanctions for Discovery Misconduct and Spoliation of Evidence [Doc. No. 101], which the court has addressed in a separate Ruling, also issued today.

1

establish that there are no genuine issues of material fact in dispute and that it is entitled to judgement as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); White v. ABCO Engineering Corp., 221 F.3d 293, 300 (2d Cir. 2000). Once the moving party has met its burden, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," Anderson, 477 U.S. at 255, and present such evidence as would allow a jury to find in his favor in order to defeat the motion. Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).

In assessing the record, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought. Anderson, 477 U.S. at 255; Graham, 230 F.3d at 38. "This remedy that precludes a trial is properly granted only when no rational finder of fact could find in favor of the non-moving party." Carlton v. Mystic Transp., Inc., 202 F.3d 129, 134 (2d Cir. 2000). "When reasonable persons, applying the proper legal standards, could differ in their responses to the question" raised on the basis of the evidence presented, the question must be left to the jury. Sologub v. City of New York, 202 F.3d 175, 178 (2d Cir. 2000).

## II. FACTS[2]

In February 2004, Jane Doe was a student at NCC. See Def.'s Loc.R.Civ.P. 56(a)1 Statement ("Def.'s Stat.") at ¶ 1 [Doc. No. 95]. On February 10, 2004, Doe was a student in a class taught by Ronald Masi, an adjunct professor at NCC. Id. at ¶ 2. According to Doe, Masi sexually assaulted her on that day. See Plf.'s Memorandum of

---

[2] For the purposes of the instant motion, the court accepts as true facts undisputed by the parties and resolves disputed facts in favor of the non-moving plaintiff, where there is evidence to support her allegations.

2

Law in Opposition to Summary Judgment ("Mem. in Opp.") at 4 [Doc. No. 102]. Although the parties dispute whether Masi resigned voluntarily or involuntarily, Masi's employment with NCC terminated on February 13, 2004. Id. at ¶ 3; Plf.'s Loc.R.Civ.P. 56(a)2 Statement ("Plf.'s Stat.") at ¶ 3 [Doc. No. 102].

On June 12, 2003, after a female student had complained that Masi had touched her knee and made her feel uncomfortable, Dean John K. Fisher spoke to Masi and informed him that it was inappropriate to touch students and that his relationships with his students should be classroom-based only.[3] The remaining facts are in dispute and will be set forth below where relevant.

## III. DISCUSSION

### A. Title IX Claims (Counts 1 & 2)

Doe brings hostile-environment (Count 1) and sexual-harassment (Count 2) claims against the defendants, alleging that their deliberate indifference to Masi's harassment of her violated Title IX's prohibitions on gender discrimination. Congress promulgated Title IX to discourage educational institutions who receive federal funding from engaging in gender-based discriminatory practices. Title IX explicitly sets forth that "[n]o person in the United States shall, on the basis of sex, be excluded from

---

[3]The court notes that Doe's Local Rule 56(a)2 Statement failed to provide specific citations to the evidence in the record, as is required by the Local Rule. See D. Conn. L. Civ. R. 56(a)(3) ("Each statement of material fact [and each denial]. . . by an opponent in a Local Rule 56(a)2 Statement . . . must be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial and/or (2) evidence that would be admissible at trial."). According to the Rule, such failure "may result in sanctions, including, . . . when the opponent fails to comply, an order granting the motion [for summary judgment]." Id.

In the absence of proffered evidence to the contrary, the court will deem the facts set forth in the defendant's Local Rule 56(a)(1) Statement to be admitted by the plaintiff. See S.E.C. v. Global Telecom Services, L.L.C., 325 F. Supp. 2d 94, 109 (D. Conn. 2004).

participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Under Title IX, the aggrieved party has a right of action for injunctive relief or monetary damages. Murray v. NYU College of Dentistry, 57 F.3d 243, 248 (2d Cir. 1995).

A recipient of federal funding can, under certain circumstances, be liable under Title IX for discrimination arising out of teacher-student harassment. See Gebser v. Lago Vista Indep. School District, 524 U.S. 274, 290 (1998). In order to establish a claim based on teacher-student harassment under Title IX, a plaintiff must demonstrate that an official with authority to take corrective action knew of the harassment yet failed to adequately respond because of deliberate indifference. Id. Thus, the two elements for such a claim are: (1) actual notice, and (2) deliberate indifference. See Hayut v. State Univ. of New York, 352 F.3d 733, 750-51 (2d Cir. 2003).

Regarding the second element, the Second Circuit has explained that:

> The Supreme Court has held that Title IX's requirement of an adequate response is violated not only if school officials render no response . . . but also if the response that is rendered amount[s] to deliberate indifference to discrimination. . . . Deliberate indifference may be found both when the defendant's response to known discrimination is clearly unreasonable in light of the known circumstances and when remedial action only follows after a lengthy and unjustified delay.

Id. at 751.

According to Doe, the defendants were aware of four other complaints of sexual misconduct by Masi prior to her complaint.[4] See Plf.'s Mem. in Opp. at 9-26. The

---

[4] Doe claims that, when she initially told Professor Ernest Britt about the incident involving Masi, Britt told her "this has happened before . . . someone complained about Masi . . . [but] nothing was done." See Plf.'s Stat. at Vol. II, Doe Dep. at 54, 57. Britt denies having

4

defendants disagree with this assertion, arguing that they were aware of only one complaint prior to Doe's and took corrective action in that case. See Def.'s Memorandum in Support of Summary Judgment ("Mem. in Supp.") at 7 [Doc. No. 95]. That incident involved R.M.,[5] a female student, who reported to Professor Althea Seaborn that she felt "uncomfortable" being in Masi's class, because he had put his hand on her knee and suggested that she call him at home and that they go to the movies together. See Def.'s Stat. at Ex. D, Seaborn Dep. at 29-30. The defendants claim that this incident "in no way placed [them] on 'actual notice' that Professor Masi was a 'known' or 'obvious risk.'" See Def.'s Mem. in Supp. at 9. Even so, the defendants argue that they did not exhibit deliberate indifference to Masi's conduct in this incident; instead, after the student met with Dean Fisher, the Dean investigated the matter by interviewing relevant faculty members and then "lectured [Masi] quite sternly" and informed he must only have academic relationships with his students. See Def.'s Stat. at Ex. E, Fisher Dep. at 41.

Regarding the first prong, actual notice, although the defendants claim that R.M. only complained to Professor Seaborn that Masi "had put his hand on her knee, told her she could call him at home and that they could go to the movies," which conduct

---

said this, see id. at Ex. 3, Britt Dep. at 10; moreover, the defendants challenge Doe's testimony regarding Britt's statements as hearsay and thus not admissible, see Def.'s Reply at 7-8. In a footnote, Doe had argued that Britt's statements are admissible as vicarious admissions under Fed. R. Evid. 801(d)(2)(D). See Plf.'s Mem. in Opp. at 7 n.5. The defendants challenge this on the basis that Doe has provided no evidence to substantiate her assertion that Britt was NCC's agent acting within the scope of his employment, and also that Britt was an adjunct professor with only limited duties, none of which included administering sexual harassment complaints. See Def.'s Reply at 8. The court need not decide this evidentiary challenge at this time, however; it can analyze the defendants' Title IX liability even without relying on Britt's statements that NCC knew of Masi's harassing behavior.

[5]The court has used initials to afford non-party students privacy.

Professor Seaborn believed was not inappropriate, see Def.'s Stat. at Ex. D, Seaborn Dep. at 35-37, in her statement to the police R.M. indicated that not only did Masi put his hand on her lap, but he told her that he did not want an affair but a relationship, that it was "boring to be with one person all your life," that she would not have to worry about her grades, and that "whatever happens no one will find out," see id. at Ex. H, R.M. Police Statement at 2.  R.M. claims to have reported these statements and conduct to Seaborn and Fisher.  See Plf.'s Stat. at Vol. I, Ex. 17, R.M. Aff. at ¶¶ 4-5.  Thus, the court finds that Doe has presented a genuine issue of fact as to whether the defendants had actual notice of Masi's misconduct.  See Tesoriero v. Syosset Cent. Sch. Dist., 382 F. Supp. 2d 387, 397 (E.D.N.Y. 2005) (agreeing with most federal courts that "the 'actual knowledge' need only be of facts indicating that the teacher has the potential to abuse a student").

As for whether the defendants adequately responded to R.M.'s complaints, the deliberate indifference standard is often "a fact-laden question."  Id. at 398 (citations omitted).  Although, as the Second Circuit notes, "[t]he Supreme Court has rejected the use of such an objective ('should have known') test for deliberate indifference in the Title IX context, . . . [o]f course, a showing that the defendant 'should have known' can, in some circumstances, create an inference–at least sufficient to raise a genuine issue–that the defendant did know."  Gant v. Wallingford Bd. of Educ., 195 F.3d 134, 141 n.6 (2d Cir. 1999).  In this case, R.M. asserts that she went to Seaborn shortly after the incident "because I knew she was a lawyer," and that Seaborn told her she could complain but that it would be "my word against Masi's."  See Plf.'s Stat. at Vol. I, Ex. 17, R.M. Aff. at ¶ 4.  According to R.M., Seaborn's comment led her to refrain from filing a

6

complaint, although she ultimately did complain to Dean Fisher months later. See id. at ¶ 5. The defendants have addressed Fisher's response; they also argue that Seaborn is not an "appropriate person" within the meaning of Title IX, because she was not an official with authority to take corrective action. See Def.'s Reply at 6. However, the court finds this is an issue of fact. Moreover, Seaborn in her deposition testified that she discussed the matter with Professor Skeeter, after R.M. agreed that she tell him, who according to Seaborn's testimony had the authority to take corrective action.[6] See Plf.'s Stat. at Vol. II, Ex. 9, Seaborn Dep. at 32. Seaborn then talked to Masi about the incident. Id. at 38-39. There is no indication that Seaborn reported the incident directly after R.M. complained,[7] or that any effort was taken to track Masi's behavior toward R.M. until R.M. ultimately reported the incident to Dean Fisher in June 2003.

The next incident of which the defendants had actual notice and acted with deliberate indifference, according to Doe, occurred between 1999 and 2001, and allegedly involved a female student named "Danielle" who had claimed that Masi engaged in sexually inappropriate conduct toward her. See Plf.'s Mem. in Opp. at 9-18. However, besides establishing through Masi's deposition that the student charged him with sexual misconduct, Doe has provided no evidence that the defendants were aware of Masi's behavior toward Danielle, apart from vague, inadmissible statements that Danielle had contacted NCC faculty after having had a nervous breakdown following

---

[6] Indeed, it were Professors Skeeter and Seaborn who went to Masi's home to ask him to resign. See id. at Seaborn Dep. at 56.

[7] Although R.M. had initially indicated that she wished to keep the matter confidential, Seaborn admitted in her deposition that the school's policy was that if someone complained of an "unwanted sexual advance" by a professor, she would "have to report it" regardless of the student's wish for confidentiality. See Plf.'s Stat. at Vol. II, Ex. 9, Seaborn Dep. at 31-32, 69-70.

7

Masi's alleged assault. See id. at 14; Plf.'s Stat. at Vol. II, Ex. A, Masi Dep. at 41-42. Such vague assertions are insufficient to create a material issue of fact as to whether any "appropriate person" under Title IX–that is, a school official with authority to take corrective action–knew of the harassment yet failed to adequately respond because of deliberate indifference. See Gebser, 524 U.S. at 290. Doe also claims that the defendants misled her into believing that the wrong student was in fact Danielle, thereby wasting much of plaintiff counsel's time and expenses in interviewing a student who Detective James Kline[8] ultimately determined did not fit the description Masi had previously given of her. See Plf.'s Stat. at Vol. I, Ex. 15, Kline Supplemental Report. However, from this the court cannot infer that the defendants had actual notice of any sexual misconduct by Masi toward Danielle, especially considering the Supreme Court's admonition that Title IX liability cannot be based on theories of respondeat superior or constructive notice. See Gebser, 524 U.S. at 285.

The third incident, according to Doe, involved W.K. in November 2003. Doe has provided evidence of W.K.'s statement to the police, in which she indicated that she went to Seaborn after Masi told her he wanted to have a relationship "because in a relationship you do more than have sex," and that he "wanted this to be kept quiet . . . [and that] another girl took this out of context and tried to turn things around on him but didn't get too far." See Plf.'s Stat. at Vol. I, Ex. 1, W.K. Statement at 31. W.K. told Seaborn of this incident, and Seaborn urged her to tell Skeeter and the Dean; however, W.K. had come up with "a plan to deflect his advances." Id. at 33-34. While Seaborn's

---

[8]Detective Kline of the Connecticut State Police interviewed Masi and others after the alleged assault made on Doe.

reaction may not be unreasonable, the court finds that Doe has created an issue of fact as to whether the school's policy, admitted by Seaborn, which would have required her to report the incident regardless of W.K.'s "plan," renders Seaborn's response inadequate under Title IX. Indeed, according to Barbara Drotman, the school's Dean of Students, "[w]hen a student brings the complaint forward, then it's the obligation of the person who is the recipient of this complaint to investigate in some manner."[9] See Plf.'s Stat. at Vol. II, Ex. 2, Drotman Dep. at 17.

The fourth incident, according to Doe, involved an anonymous student, and it allegedly occurred approximately a week prior to the incident involving the plaintiff, in February 2004. Doe relies on handwritten notes, written by Virginia Dellamura, NCC's head of Human Resources, which recorded comments made by Seaborn during a meeting held on February 13, 2004 between Fisher, Skeeter and Seaborn regarding the Doe incident. See Plf.'s Stat. at Vol. II, Ex. 7, Dellamura Dep. at 32-33. The handwritten notes contain bullet points of incidents involving Masi, including one which states: "Althea Seaborn – different female student – same story almost." See id. at Vol. I, Ex. 23. This statement is made directly following a short description of an incident of sexual harassment/assault with another student, which Doe agrees is

---

[9]The defendants cite to Litman v. George Mason Univ., 131 F. Supp. 2d 795 (E.D. Va. 2001), to support the proposition that the existence of a sexual harassment policy that required professors to report complaints of sexual harassment "is not a substitute for knowledge of a supervisory official." See Def.'s Reply at 12. However, the court notes that Litman is an Eastern District of Virginia decision, and thus not controlling on this court; moreover, although the court in Litman refused to impute the knowledge of the professor to whom the plaintiff complained to the university "despite any failure by [that professor] to comply with the university's sexual harassment policy," the court reasoned that the plaintiff had not shown that the professor "had supervisory authority over the harasser, such that he could have directly taken corrective action to cure the problem." Litman, 131 F. Supp. 2d at 799-800. In this case, the court has already found that the parties have created an issue of fact as to whether Professor Seaborn was an "appropriate person" within the meaning of Title IX. See supra at 8.

"impossible to tell if this incident involved a student other than Doe." See Mem. in Opp. at 24. However, Doe argues that the "different female student" bullet point indicates "that there was at least one other female student assaulted by Masi in February 2004, whom the college has never identified." Id. Doe further points to a memorandum authored by Seaborn on February 13, 2004, in which she alerted the chair of the business school, Ronald Bealer, that "[l]ast week" a student complained to her about "unwelcome sexual advances" by Masi. See Plf.'s Stat. at Vol. I, Ex. 24. The memo shows that Seaborn followed up this complaint from the student with a brief meeting, and that as of that date that student was "still considering whether she wishes to pursue this matter." Id. Although the defendants argue that this memo is non-probative because it does not evidence a complaint of sexual misconduct to an "appropriate person" and because it was dated after the incident involving Doe, see Def.'s Reply at 13-14, the court still finds that there is an issue of fact as to whether the defendants, through Seaborn, were on notice of yet another incident of sexual misconduct involving Masi.

The court would be hesitant to find deliberate indifference solely with respect to this fourth incident, even if there was actual notice, because that incident occurred only about a week prior to the Doe incident. However, because of the court's finding that Doe has created a genuine issue of fact regarding at least the complaints made by R.M. and W.K., the court finds that Doe has created an issue of fact as to whether the inaction on the part of Seaborn, or any other school official, in this fourth incident amounted to "deliberate indifference" as that standard is used under Title IX.

The court finds that at least three of these incidents raise a material question

10

about whether the defendants had actual notice but were deliberately indifferent to complaints about Masi's harassing conduct. Therefore, the defendant' Motion for Summary Judgment is denied on the Title IX counts.[10]

### B. State Law Claims: Eleventh Amendment and Sovereign Immunity

The defendants argue that Doe's state law claims of negligent retention and supervision (Count 3) and negligent infliction of emotional distress (Count 4) are barred by the Eleventh Amendment and state sovereign immunity.[11] See Def.'s Mem. in Opp. at 15. The defendants cite to Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 121 (1984), in which the Supreme Court held that federal courts are barred by the Eleventh Amendment from hearing pendent state law claims against the state, its agencies, or its officials without the state's consent. The claims in Counts 3 and 4 are directed only against the defendants, Norwalk Community College, and the Board of Trustees, Connecticut Community Colleges, and thus are claims directed at the State of Connecticut. See Barde v. Bd. of Trustees of Regional Cmty. Colls., 207 Conn. 59, 64 (1988) ("Although the named defendant here is the board of trustees of regional community colleges, these colleges are state public institutions and the real party in interest is the state."); see also Brown v. Western Conn. State Univ., 204 F. Supp. 2d 355, 361 (D. Conn. 2002) (citing cases). Based on the defendants' sound argument

---

[10] In addition, in a separate Ruling issued today, the court grants Doe's Motion for Sanctions [Doc. No. 101], which includes an adverse inference instruction against the defendants: clearly, the adverse inference, in combination with the evidence submitted by Doe in opposition to the Motion for Summary Judgment, is more than sufficient to defeat summary judgment. See Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d 93, 107 (2d Cir. 2001).

[11] Doe has not responded to this immunity argument, having only addressed the merits of her state law claims. See Plf.'s Mem. in Opp. at 36-37.

and because Doe has not pointed the court to any waiver of immunity, the state law claims are dismissed on the basis of Eleventh Amendment immunity, absent objection.

IV. **CONCLUSION**

Based on the foregoing analysis, the defendants' Motion for Summary Judgment **[Doc. No. 95]** is DENIED as to Counts 1 and 2 and GRANTED as to Counts 3 and 4, which are DISMISSED based on Eleventh Amendment immunity.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 16th day of July, 2007.

                                          /s/ Janet C. Hall
                                          Janet C. Hall
                                          United States District Judge